## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JERALD BOITNOTT, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | |
| INSPIRE BRANDS, INC. d/b/a ARBY'S, and ARBY'S RESTAURANT GROUP, INC., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff, Jerald Boitnott ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Inspire Brands, Inc., doing business as "Arby's", and Arby's Restaurant Group, Inc. (collectively, "Defendants") for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 12181 *et seq.* (the "ADA") and its implementing regulations, averring as follows:

## INTRODUCTION

1.      Plaintiff brings this civil rights class action on behalf of all others similarly situated against Defendants for violations of Title III of the ADA and its implementing regulations in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled and/or leased by Defendants ("Defendants' facilities").

2.      Despite passage of the ADA more than twenty-five years ago, to this date,

1

Defendants' properties are not fully accessible to persons with mobility disabilities. Defendants have discriminated, and continue to discriminate, against Plaintiff, and all others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations at Defendants' restaurants because of Defendants' inaccessible parking lots and paths of travel.

3.      Defendants have also failed to make reasonable modifications to their policies, practices, and procedures that are necessary to provide their goods, services, facilities, and accommodations to individuals with mobility disabilities. By failing to undertake efforts to ensure that its parking facilities are accessible, Defendants subject Plaintiff and those similarly situated to discrimination in violation of the ADA.

4.      Defendants will continue discriminating unabated unless and until enjoined as Plaintiff requests. Accordingly, Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendants from continuing their discriminatory conduct, including an order directing Defendants to make readily achievable alterations to their facilities to remove physical barriers to access and to make its facilities fully accessible to and independently usable by people with disabilities to the extent required by the ADA; an order requiring Defendants to make all reasonable modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis; and a declaration determining that Defendants' policies and practices of discrimination result in a violation of Title III of the ADA and its

implementing regulations; an award of attorneys' fees, expenses, and costs associated with pursuit of this litigation; and any other such relief that this Court deems just and proper.

## THE ADA'S CLEAR AND COMPREHENSIVE MANDATE

5.    The ADA was enacted over a quarter century ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

6.    The ADA is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

7.    The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to

3

use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

8.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in the goods or services offered by a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

9.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from providing goods, services, facilities, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

## THE ADA AND THE RIGHT OF ACCESS

10.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

11.    The ADA requires public accommodations to provide individuals who use wheelchairs, scooters, and other mobility devices full and equal enjoyment of the public accommodation's facilities. 42 U.S.C. § 12182(a).

12.    The ADA specifically lists access to public accommodations as the first priority that public accommodations should address in ensuring access: "First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces." 28. C.F.R. § 36.304.

13.    The ADA and its implementing regulations define prohibited discrimination to include the following:  (1) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv); (2) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1); (3) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and (4) the failure to maintain those features

of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

14.     The ADA requires public accommodations to design and construct facilities to be readily accessible to, and independently usable by, individuals with disabilities – in other words, a facility's access and usability must be "ready" for an individual with a disability. 42 U.S.C. § 12183(a)(1).

15.     When a facility is altered in a manner that affects or could affect its usability, the facility must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

16.     "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG'), which lay out the technical structural requirements of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1006 (9th Cir. 2015).[1] The ADAAG, in relevant part, provides detailed guidance regarding slope requirements for parking spaces and paths of access. *See* 36 C.F.R. § pt. 1191, App. D (the 2010 Standards), §§ 403.3, 405.2-3, 502.4; 28 C.F.R. § pt. 36, App. D (the 1991 Standards), §§ 4.3.7, 4.6.3, 4.8.2, 4.8.6. These requirements are designed to make

---

[1] The ADAAG is promulgated by the Department of Justice pursuant to 42 U.S.C. § 12186(b). There are two active ADAAGs, the 1991 ADAAG Standards ("1991 Standards") and the 2010 ADAAG Standards ("2010 Standards"). The 1991 Standards appear in 28 C.F.R. § pt. 36, App. D, and are available at: https://www.ada.gov/1991standards/adastd94-archive.pdf. The 2010 Standards appear in 36 C.F.R. § pt. 1191, App. D, and are available at: https://www.ada.go v/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf.

it possible for a person with a mobility disability to identify, and then utilize an accessible parking space and independently access a business.

17.    When discriminatory architectural conditions exist within a public accommodation's facility, the ADA directs that a "public accommodation **shall** remove architectural barriers in existing facilities . . . where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(b) (emphasis added).

18.    The failure to remove architectural barriers, where such removal is readily achievable, is discrimination under the ADA. 42 U.S.C. § 12182(b)(2)(A)(iv).

19.    Public accommodations also must "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities[.]" 28 C.F.R. § 36.211(a). While isolated, temporary and reasonable disruptions in access are permitted, *see* 28 C.F.R. § 36.211(b), allowing inaccessibility to persist beyond a reasonable period of time, allowing accessible features to repeatedly fall out of compliance, or failing to arrange for prompt repair of inaccessible features violate the ADA. *See* 28 C.F.R. pt. 36 app. C § 36.211; Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508, 34523 (June 17, 2008).

20.    In addition to tangible barrier removal requirements as well as physical design, construction, and alteration requirements, the ADA further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

21.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

22.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

23.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

24.     Plaintiff's claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

25.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

26.     Plaintiff Jerald Boitnott, at all times relevant hereto, is and was a resident of St. Paul, Minnesota.

27.     Plaintiff, as a result of his disability, has been prescribed a four-wheeler walker with convertible seat, a cane, and a wheelchair. Because Mr. Boitnott's condition

can vary, so does his use of and reliance upon these mobility devices. Thus he may require a cane on days when he is more stable, and the four-wheeler walker with convertible seat on days when he is less stable, and a wheelchair when his condition worsens so that he cannot balance and is at risk for falling even with a four-wheeler walker. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

28.     Plaintiff is a tester in this litigation and a consumer who wishes to access Defendant's goods and services.  *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

29.     Defendant Inspire Brands, Inc. is a corporation organized under Delaware law, and is headquartered at 1155 Perimeter Center West, Atlanta, Georgia 30338.

30.     Defendant Arby's Restaurant Group, Inc. is a corporation organized under Delaware law, and is headquartered at 1155 Perimeter Center West, Atlanta, Georgia 30338.

31.     Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS AND PLAINTIFF'S EXPERIENCE

**Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities.**

32.     Plaintiff has visited Defendants' facilities located at 1218 Apache Drive SW, Rochester, Minnesota; 2130 37th Street NW, Rochester, Minnesota; 7185 East Point Douglass Road, Cottage Grove, Minnesota; and 1807 Suburban Avenue, St. Paul, Minnesota, including within the last year, where he experienced unnecessary difficulty and risk due to excessive slopes in Defendants' purportedly accessible parking facility, as set forth in more detail below.

33.     As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded.

34.     Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities so long as Defendants' facilities remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendants' facilities.

35.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities in violation of Plaintiff's rights under the ADA.

36.     Plaintiff is directly interested in whether public accommodations, like Defendants, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

37.     Though Plaintiff is serving as a tester in this case, Plaintiff would like to patronize Defendants' facilities in the future and utilize Defendants' services; however, Defendants' inaccessible facilities have, and continue to, deter Plaintiff from patronizing Defendants' facilities.

**II.      Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to      Defendants' Facilities.**

38.      Defendants are engaged in the ownership, operation, management and development of the fast-food restaurant chain, Arby's, throughout the United States.

39.      As the owner and/or operator and manager of their properties, Defendants employ centralized policies, practices and procedures with regard to the design, construction, alteration, maintenance and operation of their facilities.

40.      To date, Defendants' centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA by designing, constructing and altering facilities so that they are not readily accessible and usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendants' facilities are maintained.

41.      On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendants, and found the following violations, which are illustrative of the fact that Defendants implement policies and practices that routinely result in accessibility violations:

   a)  7744 5th Avenue S, Richfield, Minnesota

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

   b)  1218 Apache Drive SW, Rochester, Minnesota

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

   c)  2130 37th Street NW, Rochester, Minnesota

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

d) 7185 East Point Douglass Road, Cottage Grove, Minnesota

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

e) 1657 S Robert Street, St. Paul, Minnesota

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

f) 1279 Town Centre Drive, Eagan, Minnesota

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

g) 3000 Snelling Avenue, Minneapolis, Minnesota

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

h) 1807 Suburban Avenue, St. Paul, Minnesota

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

42.    The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendants' facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, caused by Defendants' systemic disregard for the rights of individuals with disabilities.

43.    Defendants' systemic access violations demonstrate that Defendants either employ policies and practices that fail to design, construct and alter its facilities so that they are readily accessible and usable, and/or that Defendants employ maintenance and operational policies and practices that are unable to maintain accessibility.

44. As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' corporate policies and practices, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated.

45. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendants' network of facilities.

## CLASS ALLEGATIONS

46. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure individually and on behalf of the following classes:

(1) All persons with qualified mobility disabilities who, due to Defendants' failure to comply with the ADA's accessible parking and path of travel requirements, have experienced or will experience slope-related injuries that occur within the parking facilities at all locations within Minnesota for which Defendants own and/or control the parking facilities.

(2) All persons with qualified mobility disabilities who, due to Defendants' failure to comply with the ADA's accessible parking and path of travel requirements, have experienced or will experience slope-related injuries that occur within the parking facilities at all other locations within the United States for which Defendants own and/or control the parking facilities.

47. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

48.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

49.     <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' goods, services and facilities due to the discriminatory conduct described above.

50.     <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

51.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION

## Violations of 42 U.S.C. §§ 12181, *et seq.*

52.     Defendants have failed, and continue to fail, to provide individuals with mobility disabilities with full and equal enjoyment of its facilities.

53.     Defendants have discriminated against Plaintiff and the putative classes in that Defendants have failed to make Defendant's facilities fully and readily accessible to, and independently usable by, individuals with mobility disabilities in violation of 42 U.S.C. § 12182(a), 42 U.S.C. § 12183(a)(2), and the ADAAG, as described above.

54.     The architectural barriers described above demonstrate that Defendants' facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals with mobility disabilities. 42 U.S.C. § 12183(a).

55.     The accessible features of Defendants' facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 CFR § 36.211.

56.     The architectural barriers described above demonstrate that Defendants' facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs. 28 CFR § 36.211(a).

57.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers, as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

58.     Defendants have possessed sufficient financial resources, control, and authority to remove the architectural barriers and modify its parking facilities to comply

with the ADAAG, but Defendants have not removed such impediments and has not modified its parking facilities. Instead, Defendants have intentionally maintained its retail stores to be inaccessible and has refrained from making alterations to comply with the ADAAG.

59.     Defendants' repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

60.     By failing to provide accessible parking facilities, Defendants have engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination by failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

61.     Defendants' policies, practices, and/or procedures, or Defendants' failure to modify policies, practices, and procedures, (1) deny individuals with mobility disabilities full and equal access to all of the goods, services, privileges, advantages, and accommodations that make up Defendants' facilities; (2) ensure barriers within Defendants' facilities persist indefinitely and remain unremoved; and (3) ensure Defendants' facilities do not comply with ADA building design regulations and standards.

62.     A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of Defendants' goods, services, facilities, privileges, advantages, and accommodations.

63.    Defendants' ongoing and continuing violations of Title III have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiff and those similarly situated.

64.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a.    A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs: (i) Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) that Defendants change their policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.    An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing Plaintiff's counsel as class counsel;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f.    The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: March 14, 2019                    Respectfully submitted,

                                         **THRONDSET MICHENFELDER, LLC**

                                         */s/ Patrick W. Michenfelder*
                                         Patrick W. Michenfelder (#024207X)
                                         Chad Throndset (#0261191X)
                                         Cornerstone Building
                                         One Central Avenue West, Suite 203
                                         St. Michael, MN 55376
                                         Tel: (763) 515-6110
                                         Fax: (763) 226-2515
                                         pat@throndsetlaw.com
                                         chad@throndsetlaw.com

                                         **CARLSON LYNCH, LLP**

                                         R. Bruce Carlson
                                         Kelly K. Iverson
                                         Bryan A. Fox
                                         1133 Penn Avenue, 5th Floor
                                         Pittsburgh PA, 15222
                                         (412) 322-9243 (Tel.)
                                         bcarlson@carlsonlynch.com
                                         kiverson@carlsonlynch.com
                                         bfox@carlsonlynch.com
                                         (Pro Hac Vice Application Forthcoming)

                                         *Attorneys for Plaintiff*